```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION


Daniel J. Segal, et al,              :  Case No. 1:07-cv-348
                                     :
     Plaintiffs,                     :
                                     :
vs.                                  :
                                     :
Fifth Third Bank, N.A., et al,       :
                                     :
     Defendants.                     :
```

**ORDER**

Before the Court is Defendants' motion to dismiss Plaintiff's Amended Class Action Complaint. (Doc. 22) Plaintiffs oppose the motion (Doc. 23), and Defendants have replied. (Doc. 25)  Plaintiffs have also filed supplemental authorities in support of their opposition. (Docs. 26, 28)

Plaintiff Daniel Segal is a beneficiary of a fiduciary trust account administered by Defendant Fifth Third Bank. Defendant First Third Bancorp is the Bank's corporate parent. Segal generally alleges that the Bank breached its fiduciary duties, unjustly enriched itself at his expense, and breached its contract to properly administer the trust account in accordance with fiduciary duty principles.

Segal alleges individual claims on his own behalf, and also brings claims on behalf of two defined Rule 23(b)(3) classes:

> (a) <u>The Beneficiary Class</u>, consisting of all beneficiaries of trust, estate, or other fiduciary accounts for which the Bank or any

-1-

>of its predecessors acted as a trustee, executor, or other form of corporate fiduciary at any time from March 1, 2001 to the present (the "Class Period'); and
>
>(b) <u>The Proprietary Funds Class</u>, consisting of all Beneficiary Class members whose trust, estate, or other fiduciary accounts, for which the Bank or any of its predecessors acted as a trustee, had, directly or indirectly, Proprietary Fund assets allocated to any such account at any time during the Class Period.

(Am. Complaint ¶57)

According to the complaint, the Bank administers several types of fiduciary accounts and provides related services, including customized portfolio management. (¶10)  The Bank failed to exercise good faith by engaging in self-interested or imprudent asset placement decisions for those accounts, primarily the Bank's purchase of proprietary mutual funds.  (¶8)  The Bank also failed to "undertake a trust-by-trust analysis" of each fiduciary account and instead, uniformly decided that trust assets be invested "to the extent feasible, in Fifth Third Funds."  (¶¶23 & 24)  The Bank's prior practice of offering "highly individualized trust administration and asset management services" paid for with fiduciary account fees, was and is being replaced by a standardized portfolio management approach adopted due to various Bank acquisitions and expansions.  This standardized, lower-level approach "force-placed" the Bank's fiduciary accounts into the Bank's proprietary funds.  This

-2-

conduct violated the Bank's fiduciary obligations, and disregarded potential adverse tax consequences to the account beneficiaries.  (¶¶25-28)  This misconduct resulted in increased income to the Bank from higher fees charged to the accounts for advisory, administrative, and other services.  Investing the fiduciary funds in the Bank's proprietary mutual funds also permitted the Bank to achieve economies of scale in its mutual fund operation that benefitted the Bank, to the detriment of the account beneficiaries.  (¶¶29-32)

Plaintiff alleges that the objectionable conduct is ongoing, because the Bank is continuing to seek merger acquisitions, which will permit the Bank to further dilute the value of its fiduciary and trust services provided to the account beneficiaries.  (¶¶37-38)

Jurisdiction is alleged based on diversity between the parties.  Segal is an Ohio resident, but he alleges that other members of the putative class are residents of other states.  The Bank is a federally chartered bank and Bancorp is an Ohio corporation, both domiciled in Cincinnati.  (¶¶43-46)  Segal alleges supplemental jurisdiction is proper over his individual claims under 28 U.S.C. §1367.  He alleges state law claims for breach of fiduciary duty (Count I), unjust enrichment (Count II), breach of contract premised on the underlying fiduciary instruments (Count III), and another fiduciary duty claim (Count

IV) based on the improper investments of amounts segregated in the accounts to satisfy tax obligations. Segal brings an individual claim for breach of fiduciary duty (Count V), arising out of other specific Bank actions taken as Trustee of the Segal Trusts.

Defendants move to dismiss the complaint. They argue that the class claims are pre-empted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Alternatively, they argue that each of the state law claims should be dismissed on the merits because, for various reasons, they fail to state claims as a matter of law.

## DISCUSSION

1. <u>Standard of Review</u>.

A Rule 12(b)(6) motion operates to test the sufficiency of the complaint. In considering such a motion, the court is required to construe the complaint in the light most favorable to the Plaintiff, and accept as true all well-pleaded factual allegations. See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), and <u>Roth Steel Products v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. <u>Lewis v. ACB Business Servs., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998). A court will, though, accept all reasonable inferences that might be drawn from the complaint. <u>Fitzke v. Shappell</u>, 468 F.2d 1072,

1076-77 at n.6 (6th Cir. 1972).

As noted in <u>Mayer v. Mylod</u>, 988 F.2d 635, 637 (6th Cir. 1993):

> The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. . . . As the court stated in *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'

The Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S.Ct. 1955 (2007) casts some doubt on these long-standing pleading requirements.  While some uncertainty exists in this Circuit on <u>Twombly</u>'s reach,[1] <u>Twombly</u> requires allegations "plausibly suggesting" the existence of a cognizable claim.  <u>Id</u>. at 1964.  However, <u>Twombly</u> does not alter this Court's duty to construe the complaint in the light most favorable to plaintiff.

2. <u>SLUSA Preclusion</u>.

Congress enacted SLUSA in 1998, in response to concerns that state law class actions were being utilized to circumvent the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995.  PSLRA was intended to correct certain perceived abuses of

---

[1] See <u>Weisbarth v. Geauga Park Dist.</u>, 499 F.3d 538, 541-542 (6th Cir. 2007).

class action securities litigation by, among other things, imposing heightened pleading standards upon class complaints for securities fraud. SLUSA's preclusion provision states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging -
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §77p(b). The statute also authorizes removal to federal court of covered class actions originally filed in state court. The statute defines a "covered" class action as one brought on behalf of more than 50 people; a "covered" security is one traded nationally, listed on a regulated exchange, and subject to the federal securities laws. In addition to these requirements, a state law class action is precluded if the claims are based on a misrepresentation or omission of material fact (or the use of a deceptive device or scheme) "in connection with" the purchase or sale of a security. See Dudek v. Prudential Secs., Inc., 295 F.3d 875, 879 (8th Cir. 2002).

It must be kept in mind that SLUSA does not actually or completely pre-empt any and all state law claims that may have something to do with the buying and selling of securities. See

-6-

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 87 (2006): "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist."

    A.    Misrepresentation or Omission.

Defendants contend that the class claims, while styled under state law, are in essence claims based on misrepresentations or omissions of material facts (or a fraudulent or deceptive scheme) concerning the purchase of Fifth Third mutual funds. They point to Plaintiffs' original complaint in this case, which more squarely alleged a plan or scheme hatched by Defendants to shift fiduciary funds managed by the Bank into Fifth Third "Captive" mutual funds. (See, e.g., Doc. 1, ¶¶20-23) Defendants responded to the original complaint with a motion to dismiss based on SLUSA preclusion, pointing out the specific allegations of the original complaint that required that result. (See Doc. 12) Plaintiffs elected to amend, and removed most of the direct allegations of "misrepresentations," "omissions," and "schemes." Defendants now argue that Plaintiffs may not "plead around" SLUSA by cloaking their claims with state law titles, as SLUSA is an exception to the well-pleaded complaint rule.

-7-

A review of the 92 paragraphs pertaining to the amended complaint's class claims leads to the inescapable conclusion that Plaintiffs' action is premised upon a central factual allegation: that Fifth Third misrepresented or failed to disclose material facts, and/or engaged in a manipulative or deceptive course of conduct, when Fifth Third invested Plaintiffs' fiduciary funds into the Bank's proprietary mutual funds.  That allegation is clearly the gravamen of Plaintiffs' state law claims.

Plaintiffs argue that their amended complaint disavows any such contention, because in paragraph 2 they specifically allege that their claims are **not** based upon any misrepresentation, or failure to disclose, or fraudulent scheme.  They suggest they are "only" alleging classic state law claims based on Defendants' alleged breach of fiduciary duties owed to Plaintiffs.  The Court disagrees.

The fact that Plaintiffs avoid using the words "misrepresentation" and "omission" does not control the result. It is clear that the court can and should disregard the particular labels or titles Plaintiffs may affix to their claims when determining if SLUSA precludes those claims.  It is the substance of the allegations about the defendants' conduct that is key to this determination.  See, e.g., <u>Professional Mgmt. Assocs. Employees Profit Sharing Plan v. KPMG LLP</u>, 335 F.3d 800, 803 (8th Cir. 2003) [holding that a negligence claim is

-8-

"essentially" a precluded securities fraud claim]; Dudek v. Prudential Secs., 295 F.3d 875 (8th Cir. 2002), finding SLUSA precluded claims based on placement of tax-deferred annuities in plaintiffs' retirement accounts, and which alleged that the defendant-insurer benefitted from resulting higher fees and costs incurred.

Here, similarly, Plaintiffs allege that increased account fees resulted from Defendants' "asset allocation" decisions (¶7); that the bank enriched itself by making those "asset allocations" (¶9); and that the Bank engaged in self-dealing by investing in its proprietary funds rather than "independently analyz[ing] and monitor[ing] trust assets." (¶14) Whatever the state law mold these allegations may also fit, it is inescapable that the key conduct underlying all the claims is the Bank's misrepresentations or omissions about, or deceptive scheme involving, the Bank's purchase of its proprietary mutual funds with fiduciary assets. All of the class allegations of self-dealing, breach of duty, or unjust enrichment, flow from that central fact. While the alleged misconduct may have breached a contract or a fiduciary duty, it is also a "quintessential example of a fraudulent omission of a material fact under the federal securities laws." Felton v. Morgan Stanley Dean Witter & Co., 429 F.Supp.2d 684, 693 (S.D.N.Y. 2006).

Several district courts that have addressed almost identical

allegations against different banks and investment firms have reached the same conclusion.  See Kutten v. Bank of America, N.A., 2007 U.S. Dist. LEXIS 63897 (E.D. Mo., August 29, 2007), finding SLUSA precluded breach of fiduciary duty and unjust enrichment claims against the bank; Siepel v. Bank of America, 239 F.R.D. 558 (E.D. Mo. 2006) [same]; Spencer v. Wachovia Bank, N.A., 2006 U.S. Dist. LEXIS 52374 (S.D. Fla., May 10, 2006) [same]; Rabin v. JP Morgan Chase Bank, N.A., 2007 U.S. Dist. LEXIS 57437 (N.D. Ill. Aug. 3, 2007) [same].

Plaintiffs have submitted an unpublished order from the Southern District of New York in Hughes v. LaSalle Bank, where the court concluded that SLUSA does not preclude claims for breach of fiduciary duty, tortious interference and unjust enrichment.  (See Doc. 26, Exhibit 2)  The district court's order states that the court was responding to the Second Circuit's remand of the case for an evidentiary hearing on subject matter jurisdiction over the plaintiffs' original complaint.  According to the district court order, the Second Circuit posed questions about both the existence of diversity and whether SLUSA preclusion might apply.  This Court is not bound by that district court's conclusion about whether SLUSA applies to the pleadings and parties before the court in that case.  There is no definitive guidance from the Sixth Circuit on this question.  The Court finds the reasoning set forth in Kutten, Siepel, Spencer,

-10-

and Rabin to be a correct application of SLUSA preclusion to the facts and claims alleged here.

In addition, two district courts within this Circuit have followed similar reasoning to apply SLUSA preclusion in slightly different factual settings. Beary v. Nationwide Life Ins. Co., 2007 U.S. Dist. LEXIS 83137 (S.D. Ohio, September 17, 2007) (Sargus, J.) involved breach of fiduciary duty and unjust enrichment claims brought by retirement and deferred compensation plans against Nationwide, which sponsored those plans. Nationwide had negotiated revenue sharing agreements with various mutual fund companies in return for investing the plans' assets in the mutual funds. The plaintiff plans alleged that Nationwide breached its fiduciary duty to them by enriching itself with the revenue sharing fees, resulting in loss of value to the plans. The district court held: "Although Plaintiff does not specifically use the words 'untrue statement' or 'omission' in the Complaint, the substance of Plaintiff's claim is that Nationwide misrepresented a relationship with Investment Advisors or, at a minimum, omitted to disclose material facts about the relationship. In the Court's view, Plaintiff's allegations fall within the scope of SLUSA." Id. at *11.

In Horattas v. Citigroup Financial Markets Inc., 2007 U.S. Dist. LEXIS 67411 (W.D. Mich., September 12, 2007), the district court held SLUSA precluded a state law class action brought

against the investment services provider to a cemetery owner. The owner allegedly depleted and absconded with millions of dollars of funds held in irrevocable endowment care accounts for the benefit of the cemeteries, looting the cemeteries' trust assets. The district court concluded that SLUSA precluded the state law class claims against the investment advisor to the owner, finding that they alleged a fraudulent scheme concerning covered securities. The allegations of negligence or "imprudent investment" did not immunize the class claims from preclusion.

The same result applies here. Plaintiffs' allegation that Fifth Third breached its fiduciary duty, or was unjustly enriched as a result of the investments in Fifth Third mutual funds, does not protect their class claims from SLUSA.

B. "In Connection With" Covered Securities.

Plaintiffs do not dispute that Fifth Third's proprietary mutual funds are covered securities for SLUSA purposes. They argue this is irrelevant, because Defendants' conduct was not "in connection with" the purchase or sale of those securities. Plaintiffs argue they had no knowledge of the purchases and made no purchases themselves, leaving all asset allocation decisions to the Defendants. They also argue that their claims are not based on the purchase of the mutual funds per se, but upon the breach of fiduciary duty inherent in Fifth Third's decision to purchase those funds.

-12-

This argument is foreclosed by Dabit. There, the Supreme Court held that SLUSA's phrase "in connection with" must be construed consistently with settled case law construing the same phrase used in Section 10b and Rule 10b5. While standing to bring a private suit under those authorities is limited to purchasers and sellers, limitation was based on policy considerations raised by permitting any private right of action under the securities laws. See Dabit, 547 U.S. at 84 (discussing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975)). The Section 10b standing limitation does not mandate imposing a limiting construction of the phrase "in connection with" the purchase or sale of securities. Citing its prior cases,[2] the Court noted it is enough for 10b and 10b5 actions that the fraud "coincide with a securities transaction – whether by the plaintiff or by someone else." Id. at 85. The Court then noted that Congress "could hardly have been unaware" of this broad construction when it chose to use the same phrase in SLUSA. Id. Thus the Court reversed the Second Circuit's decision finding that the plaintiffs - brokers who were fraudulently induced to retain or delay selling securities, and were not purchasers or sellers - fell outside of SLUSA's preclusive scope.

Plaintiffs' reliance on pre-Dabit decisions such as Norman

---

[2] SEC v. Zandford, 535 U.S. 813 (2002), and United States v. O'Hagan, 521 U.S. 642 (1997).

v. Salomon Smith Barney, Inc., 350 F.Supp.2d 382 (S.D.N.Y. 2004) is therefore misplaced. Norman was clearly driven by the fact that plaintiffs were not purchasers or sellers of securities.

Plaintiffs also cite LaSala v. UBS, 510 F.Supp.2d 213 (S.D.N.Y. 2007), a post-Dabit opinion finding that a claim against UBS for aiding and abetting a breach of fiduciary duty was not precluded by SLUSA. The specific allegation against UBS in that case, as the district court's opinion makes clear, was the fact that UBS received **money** from two other private banks in Switzerland, and then transferred those funds to different accounts at the direction of the account holders. The holders had perpetrated a massive fraudulent stock scheme and the funds in question were allegedly proceeds of illegal stock sales. But the allegations against UBS were limited to the transfer of money from one account to another account. The district court noted that if UBS had facilitated the sale of the stock, the result would likely have been different. Id. at 243-244. The facts at issue in that case clearly differentiate it from the facts underlying Plaintiffs' claims in this case.

Plaintiffs also rely on Burns v. Prudential Securities, Inc., 218 F.Supp.2d 911 (N.D. Ohio 2002), where the district court found that SLUSA did not apply to a claim for breach of fiduciary duty against a broker who sold the securities held in plaintiffs' accounts without their notice or consent. There was

no allegation that the broker acted fraudulently, as the district court noted he sold the holdings because he was concerned that the market was about to crash. (It did not crash, but kept rising.) Plaintiffs alleged that Prudential, the broker's employer, failed to disclose material facts and made false statements about the broker's actions after the fact. The district court found the claims were not pre-empted, because the false statement or omissions took place after, and independently of, the broker's sales, and had no relationship to his decision to sell. The claims against Prudential had nothing to do with the securities in question, but rather were premised on Prudential's failure to honestly and accurately deal with plaintiffs about the situation caused by their broker. Thus the claims were not "in connection with" the sale of the securities.

Plaintiffs allegations here are far different, and distinguish the result in <u>Burns</u>. Plaintiffs allege a course of fraudulent conduct involving Fifth Third's decision to purchase Fifth Third mutual funds, a course of conduct they allege is continuing with every acquisition or merger by Fifth Third.

For these reasons, the Court concludes that the class claims alleged in Plaintiffs' Amended Complaint are precluded by SLUSA, and are therefore dismissed with prejudice. Given this result, the Court does not reach Defendants' alternative arguments concerning the merits of the state law claims.

Counts I through IV are also brought by Daniel Segal individually, and Count V is exclusively Segal's individual claim against the Defendants. His individual claims are not precluded by SLUSA. However, Segal's allegations make clear that diversity is lacking between Segal and the Defendants. The Court will therefore dismiss Segal's individual claims without prejudice.

## CONCLUSION

Counts I through IV brought on behalf of the defined class are dismissed with prejudice because they are precluded by SLUSA. Segal's individual claims in Counts I through V are dismissed without prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

Dated: March 25, 2008         s/Sandra S. Beckwith
                              Sandra S. Beckwith, Chief Judge
                              United States District Court